# 24-4251(L), 24-4252, 24-4273

# United States Court of Appeals
## for the
# Fourth Circuit

UNITED STATES OF AMERICA,

*Plaintiff/Appellee,*

— v. —

JAIRO GUSTAVO AGUILERA SAGASTIZADO,
a/k/a Coy, a/k/a Psiclogo, MELVIN CANALES SALDANA, a/k/a
Carlos Vigil Garay, a/k/a Carlos Bladimir, a/k/a Demente,
MANILESTER ANDRADE RIVAS, a/k/a Mani,
a/k/a Tandori, a/k/a Conejo, a/k/a Coqueto,

*Defendants/Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA

# REPLY BRIEF OF APPELLANTS

Joseph D. King
KING CAMPBELL
PORETZ & THOMAS, PLLC
118 North Alfred Street
Alexandria, Virginia 22314
(703) 683-7070
*Counsel for Appellant Sagastizado*

Lana Manitta
LAW OFFICE OF LANA MANITTA, PLLC
1800 Diagonal Road, Suite 600
PMB 1152
Alexandria, Virginia 22314
(703) 705-4428
*Counsel for Appellant Saldana*

Mark Bodner
ATTORNEY AT LAW
4041 University Drive, Suite 403
Fairfax, Virginia 22030
(703) 385-6667
*Counsel for Appellant Rivas*

CP Counsel Press    (800) 4-APPEAL • (JOB 811985)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................. ii

ARGUMENT ....................................................................................................1

    I.     WHETHER THE DISTRICT COURT ERRED IN
         DENYING DEFENDANTS' MOTION FOR A NEW TRIAL
         AND AGUILERA'S MOTION FOR A MISTRIAL ..........................1

         a.     Inculpatory Nature of Molina's Testimony ...............................1

         b.     This Court Should Reach the Merits of Defendant-
              Appellants' Claim ......................................................................2

         c.     Aguilera Preserved His Motion for a Mistrial. ..........................3

REVIEW OF COURT'S INSTRUCTIONS FOR COUNTS 1 AND 9
IS FOR AN ABUSE OF DISCRETION ...................................................4

         1.     Defendant Manilester Andrade Rivas preserved his objection.............4

         2.     Review of instructions on the whole case ............................................6

         3.     Record does not show jury's findings on degree of murder in
              conspiracy to murder ELT...................................................................7

CONCLUSION (AGUILERA AND MOLINA)......................................................8

CONCLUSION (RIVAS) .......................................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Burks v. United States,*
    437 U.S. 1 (1978)................................................................7

*Laird v. Horn*,
    419 F.3d 419 (3rd Cir. 2005) .............................................5

*United States v. Elbaz*,
    52 F. 4th 593 (4th Cir. 2022) ............................................3

*United States v. Mugavero,*
    521 F.2d 625 (4th Cir. 1975) ............................................6

*Yates v. United States,*
    354 U.S. 298 (1957).........................................................7

**Statutes & Other Authorities:**

Fed. R. Crim. P. 30(d)...........................................................4

Va. Code § 18.2-22 ..............................................................5

## ARGUMENT

**I.    WHETHER THE DISTRICT COURT ERRED IN DENYING DE-FENDANTS' MOTION FOR A NEW TRIAL AND AGUILERA'S MOTION FOR A MISTRIAL**

### a.    Inculpatory Nature of Molina's Testimony

Two longtime friends and gang members, Aguilera and Molina, both serving multiple life sentences for multiple murders, cooperated with the United States against the defendants hoping to receive future sentence reductions. Both told the jury that Aguilera participated in the murder of Antonio Smith to include significant details as to who shot Smith and who drove the getaway vehicle. They were the only eyewitnesses that identified Aguilera as involved in Smith's killing. They also both told the jury that the other defendants participated in murders—that is, the importance of Molina as a witness is not overstated by Aguilera as the Government argues in its brief. Brief of the United States at 35 (ECF 58).

Subsequent to Molina testifying, his entire testimony was struck by the trial court as a sanction against the United States for failing to properly disclose potentially exculpatory evidence. The defendant-appellants assert that the remedy for the jury hearing nearly a whole day of testimony from this inculpatory witness should have been a mistrial or new trial.

### b.    This Court Should Reach the Merits of Defendant-Appellants' Claim

Amongst its other arguments, the United States urges this Court to not reach the merits of defendants' claim for a new trial and/or mistrial in the case of Aguilera because any error committed by the district court was invited by the defendants. The United States points out it was the defendants that asked for Molina's testimony to be struck.[1]

First, the defendant-appellants respectfully dispute the application of the invited error doctrine where the extraordinary circumstance of the district court striking the testimony of a central government witness was caused by the government. It was the government, the district court determined, that fell short of its discovery obligations. As importantly, the potentially exculpatory information related to Molina was brought to the district court's attention *after* Molina's testimony, a key witness.

As such, the district court's initial instinct to declare a mistrial, which Aguilera endorsed at trial, was correct and it was error, as asserted by Canales in the opening brief, to supplant the right decision for the wrong one without counsel having sufficient time and the benefit of a transcript with which to make their deci-

---

[1] However, while Aguilera joined in requesting this remedy, he also requested a mistrial.

sion. Also as noted in the opening brief, the district court had made clear repeatedly throughout trial that it intended for the trial of the next three co-defendants to begin immediately after the end of Aguilera, Canales, and Rivas' trial. The pace of this multi-defendant, quadruple murder RICO case involving testimony given primarily through interpreters had been breakneck up to that point. What the transcript does not adequately convey is the brevity of time with which the defense had to consider each and every objection made during the presentation of voluminous and multi-layered exhibits primarily consisting of excerpts of conversations. This issue was no different, but it should have been.

### c. Aguilera Preserved His Motion for a Mistrial

The United States asserts in a footnote that Aguilera's request for a mistrial was an "undeveloped request, made only after the court had ruled, [and] failed to preserve Aguilera's current claim that a mistrial was necessary to remedy the alleged *Brady* violation." Brief of the United States at 34, n. 7 (citing "*Cf. United States v. Elbaz*, 52 F. 4th 593 (4th Cir. 2022)(explaining that "objections must be made with sufficient specificity so as reasonably to alert the district court of the true ground for the objection")." Defendant Aguilera disagrees. His motion for a mistrial was made prior to the district court taking anymore testimony or moving on from the issue at hand—the government's failure to properly disclose potentially exculpatory evidence and the appropriate remedy as to Molina. That is,

Aguilera's motion for a mistrial was timely, the court had the opportunity to consider it, and the context of the motion is obvious—whether Molina's stricken testimony tainted the entire trial and a mistrial should be declared. JA1502 (district court stating "I'm still somewhat concerned of whether or not that's still going to be a problem of taint throughout the whole trial. What I'm saying is the government, I think, is significantly risking reversal down the road. But this jury has been diligent, they've invested their time in this case, so I'm not going to declare a mistrial, which quite frankly I gave serious thought to doing."). Defendant Aguilera did not fail to preserve his motion for a mistrial.

## REVIEW OF COURT'S INSTRUCTIONS FOR COUNTS 1 AND 9 IS FOR AN ABUSE OF DISCRETION

### 1. <u>Defendant Manilester Andrade Rivas preserved his objection</u>

In accordance with Rule 30(d) Fed. R. Crim. P. Mani, speaking by and through counsel for Saldana regarding defendants' joint proposed instructions, expressed his objections to the Government's proposed instruction for conspiracy to commit first and second degree murder and the reasons therefor.  During discussion of instructions appellant Saldana's counsel stated to the Court, "[a]nd that sort of leads me to the other issue that I have with the instructions related to the murders and the *conspiracy to commit the murders*." (emphasis added) JA1514-

1515 Counsel went on to state her concern that the instructions included consideration of second degree murder which is not in the Government's theory of the case, and that her client could be convicted of something that he was not even charged with. Defendants' proposed instruction cited to authority from the Third Circuit on review of a habeas case. The Third Circuit expressed grave doubt that the instructions it reviewed explained that the "killer's co-conspirator must have also intended that Milano be killed." It affirmed the district court's conclusion that the instruction given by the trial court on accomplice liability was not harmless error. JA1482, JA1488. *Laird v. Horn*, 419 F.3d 419, 428-429 (3rd Cir. 2005).

The District Court declined to give defendants' proffered instruction. JA1517.

The Government contends that defendants did not object after the instructions were given. During the exchange following its charge to the jury the Court asked if there were any objections, and Mani's counsel responded "[n]o your Honor. Not other than what we've already talked about." JA1696

The Government also notes that the defendants' proposed instruction mentions Virginia Code § 18.2-22 while referring to the elements required to prove conspiracy to commit first *or second* degree murder. (emphasis supplied) (Government's Brief in Response at 51-52) Defendants' proposed instruction admittedly includes this error. What the Government does not say is that this same,

proposed instruction spelled out each element of the offense, specifically stating as the third element "that the defendant and at least one other party to the agreement intended to murder the victim." JA1485 This was a correct statement of the law.

### 2. Review of instructions on the whole case

Other instructions provided by the Court failed to remedy its error. Instructions including language that defendant " knowingly and deliberately" entered into agreements to violate the law only permitted to jury to conclude defendants' knowingly conspired. These instructions did not specify that Mani intended to murder ELT. (*cf.* Government's Brief at 53) The District Court's error was not overcome by the other instructions touching on the issues presented in Counts 1 and 9. Such instructions generally related to the concept of conspiracy, and did not direct the jury's attention to the issue of specific intent required to sustain the charges of conspiracy to murder ELT. *United States v. Mugavero,* 521 F.2d 625, 628 (4th Cir. 1975).

Surely, as the Government stresses in its invitation to examine the Court's instructions as a whole, the District Court repeated its error in it instruction to the jury. (Government's Brief at 54) The Court again instructed the jury permitting it to find Mani guilty of conspiring to murder in the first or second degree:

. . . I've already instructed you on what the government must prove to find the existence of a conspiracy, and so those instructions apply equally here, and I've already defined for you the law governing the crimes of first-*and second- degree murder* under Virginia law, as well as the elements of conspiracy. *So those instructions would apply equally to Counts 9* and 12. JA1672-1673 (emphasis supplied)

### 3. Record does not show jury's findings on degree of murder in conspiracy to murder ELT

The Government is unable to demonstrate on this record that the jury found Mani guilty of conspiracy with intent to murder ELT (first degree) or without such intent (second degree) because the record does not reflect its specific finding on this essential fact. *Yates v. United States,* 354 U.S. 298, 311-312 (1957), overruled on other grounds, *Burks v. United States,* 437 U.S. 1, 12, 17 (1978) Because the erroneous instruction given by the District Court allowed the jury to conclude that Mani was guilty of conspiring to commit the second degree murder of ELT, an offense that does not exist, the judgment convicting him of Count nine (9) of the second superseding indictment must be reversed. The jury's special verdict, based on this same determination, in support of Count one (1) alleging this offense in support of racketeering, is also in error and should be set aside.

## **CONCLUSION (AGUILERA AND MOLINA)**

For the above reasons and the reasons stated in Defendant-Appellants' open-ing brief, this Honorable Court should reverse Defendant-Appellants' convictions and remand the case to the district court for a new trial.

## **CONCLUSION (RIVAS)**

For all the foregoing reasons and those set forth in his opening brief appellant Manilester Andrade Rivas, by counsel, respectfully requests that this Court enter judgment vacating the District Court's judgment of conviction on Count nine (9) of the Second Superseding Indictment and the jury's special finding setting forth its determination of his guilt of conspiracy to murder ELT included in Count one (1). Appellant Rivas, by counsel, further requests that this Court enter an Order remanding his case to the District Court for re-sentencing following vaca-tion of the judgment of conviction of Count nine (9).

/s/ Joseph D. King
Joseph D. King
KING CAMPBELL
PORETZ & THOMAS, PLLC
118 North Alfred Street
Alexandria, Virginia 22314
(703) 683-7070
*Counsel for Appellant Sagastizado*

/s/ Lana Manitta
Lana Manitta
LAW OFFICE OF LANA MANITTA, PLLC
1800 Diagonal Road, Suite 600
PMB 1152
Alexandria, Virginia 22314
(703) 705-4428
*Counsel for Appellant Saldana*

/s/ Mark Bodner
Mark Bodner
ATTORNEY AT LAW
4041 University Drive, Suite 403
Fairfax, Virginia 22030
(703) 385-6667
*Counsel for Appellant Rivas*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. __24-4251(L)__    **Caption:** US v. AGUILERA et al.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

> **Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

> **Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

> **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

- [✓] this brief or other document contains ____1,688____ [*state number of*] words

- [ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

- [✓] this brief or other document has been prepared in a proportionally spaced typeface using
  Microsoft Word 2010 _____ [*identify word processing program*] in
  14 point Times New Roman _____ [*identify font size and type style*]; **or**

- [ ] this brief or other document has been prepared in a monospaced typeface using
  _____ [*identify word processing program*] in
  _____ [*identify font size and type style*].

(s) Lana Manitta _____

Party Name __appellant_____

Dated: __1/23/2025_____